# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

STATE OF MISSOURI, et al.,
    *Plaintiffs-Appellees / Cross-Appellants*,

v.

JOSEPH R. BIDEN, JR., et al.,
    *Defendants-Appellants / Cross-Appellees.*

Nos. 24-2332,
24-2351

## OPPOSITION TO EMERGENCY MOTION
## FOR AN IMMEDIATE ADMINISTRATIVE STAY

The Court should deny the motion for an immediate administrative stay pending a ruling on the motion for an injunction pending appeal. The government will respond substantively to the motion for an injunction pending appeal in due course. But in the meantime, entering the requested relief would exceed the proper bounds of an administrative stay and also be profoundly inequitable, causing chaos and disrupting the status quo for millions of student loan borrowers nationwide, without affording the government a full and fair opportunity to respond to plaintiffs' meritless arguments.

## STATEMENT

1. More than thirty years ago, Congress directed the Department of Education to offer student loan borrowers an income-contingent repayment (ICR) plan for student loans. The statute requires the Secretary of Education to "determine[]" the "appropriate portion" of the borrower's income on which ICR payments shall be based. 20 U.S.C. § 1087e(e)(4); *see also, e.g., id.* § 1087e(e)(1) ("The Secretary shall establish procedures for determining the borrower's repayment obligation on [a direct] loan for such year, and such other procedures as are necessary to implement effectively income contingent repayment."); *id.* § 1087e(e)(5) ("The Secretary may promulgate regulations limiting the amount of interest that may be capitalized on such loan."). The statute also authorizes the Secretary to "prescribe[]" the "period of time" over which the borrower makes payments. *Id.* § 1087e(d)(1)(D). That must be an "extended" period "not to exceed 25 years." *Id.*

Since then, the Department has offered several different ICR plans (including the original ICR plan, the PAYE plan, and the REPAYE plan).

Appellate Case: 24-2332   Page: 2   Date Filed: 07/12/2024 Entry ID: 5413114

These differed in their details but shared several essential features. First, each plan involved a determination by the Secretary regarding the amount of a borrower's income that should be "protected from [loan] payments." 88 Fed. Reg. 43,820, 43,827 (July 10, 2023). Each plan calculated a borrower's discretionary income by subtracting that protected amount from the borrower's adjusted gross income. *See* 80 Fed. Reg. 67,204, 67,239 (Oct. 30, 2015); 77 Fed. Reg. 66,088, 66,137 (Nov. 1, 2012); 59 Fed. Reg. 61,664, 61,698 (Dec. 1, 1994). Second, each plan involved a determination by the Secretary regarding the percentage of a borrower's discretionary income that should "go[] toward [monthly] loan payments." 88 Fed. Reg. at 43,827; *see* 80 Fed. Reg. at 67,239; 77 Fed. Reg. at 66,137; 59 Fed. Reg. at 61,698. Third, each plan involved a determination by the Secretary regarding the period "of time borrowers must pay before repayment ends." 88 Fed. Reg. at 43,827. Under each plan, the Secretary forgave any outstanding loan balance (principal plus interest) at the end of that period. *See* 80 Fed. Reg. at 67,209; 77 Fed. Reg. at 66,114; 59 Fed. Reg. at 61,666.

3

2. More than a year ago, the Department of Education published the Final Rule at issue. 88 Fed. Reg. 43,820. That Rule made changes to an existing ICR plan (the REPAYE plan) and renamed it the Saving on a Valuable Education (SAVE) plan. *See id.* at 43,821 ("REPAYE may also be referred to as the Saving on a Valuable Education (SAVE) plan.").

Although most portions of the Rule were scheduled to take effect on July 1, 2024, the Department exercised its statutory authority, 20 U.S.C. § 1089(c)(2), to designate certain portions of the Rule for early implementation, including a provision that generally lowered payments for borrowers by increasing the threshold for income protected from repayment. *See* 88 Fed. Reg. at 43,820-21. Then, in January 2024, the Department designated for early implementation an additional provision shortening the timeline to loan forgiveness under the plan for certain borrowers with low initial balances. *See* 89 Fed. Reg. 2489 (Jan. 16, 2024). The result is that some repayment plans had been modified and some borrowers had their loan balances forgiven under the SAVE plan as early as February 2024, well before this lawsuit was filed in April 2024.

4

3. On June 24, the district court preliminarily enjoined the Department "from any further loan forgiveness for borrowers under the Final Rule's SAVE plan" pending disposition of this case. R. Doc. 36. The district court subsequently denied plaintiffs' motion for "clarification of the preliminary injunction" that sought to prevent the Department from forgiving student loans under the timelines provided for in the preexisting ICR plans. As the district court explained, "[t]he Court need not extend this injunction beyond the scope of the Final Rule as Plaintiffs only sought injunctive relief from implementation of the Final Rule, which the Court has granted in part." R. Doc. 54.

## ARGUMENT

Plaintiffs' motion seeking immediate relief should be denied. Although styled as a request for a stay, in substance plaintiffs actually seek an injunction pending appeal. "An injunction and a stay have typically been understood to serve different purposes. The former is a means by which a court tells someone what to do or not to do." *Nken v. Holder*, 556 U.S. 418, 428 (2009). An administrative stay ordinarily "freeze[s] legal

proceedings until the court can rule on a party's request for expedited relief." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay). What plaintiffs seek is not an "administrative stay" of a lower court judgment but immediate injunctive relief suspending the operation of portions of a regulation that has taken effect and that the district court properly declined to enjoin. Such a motion "demands a significantly higher justification than a request for a stay, because unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Me. PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted). Plaintiffs cannot meet that burden, for several reasons.

First, the fundamental premise of plaintiffs' motion is incorrect: the Department has not "evade[d]" the preliminary injunction by "promulgat[ing]—without notice and comment—a new rule." Mot. 5; *see also* Mot. 1-2. The Department is complying with the district court's preliminary injunction. *See* R. Doc. 44 (notice of compliance). As explained

6

above, the Final Rule modified parts of an existing ICR plan and renamed it. While the district court preliminarily enjoined one of those changes (shortening the timeline to loan forgiveness for certain borrowers), it permitted the rest to go into effect. And because plaintiffs never challenged the regulations establishing any of the other ICR plans—including regulations creating parts of the REPAYE plan carried forward into the renamed SAVE plan—those remain in effect. *See* 88 Fed. Reg. at 43,856 ("The Department . . . will keep the maximum time to forgiveness at 20 years for borrowers with only undergraduate loans and 25 years for borrowers with any graduate loans.").

As a result, the status quo following the district court's injunction is that (1) the original ICR and PAYE plans remain in effect, and (2) the REPAYE plan has been partly amended and renamed, governed by the terms of the Final Rule's SAVE plan in all respects *except* for the criteria regarding time to forgiveness, which reverted to the terms of the original REPAYE plan in compliance with the district court's injunction.

Contrary to plaintiffs' assertion, the current state of affairs does not reflect the promulgation of some new "hybrid" plan. Rather, it simply reflects the application of well-established severability principles. As the district court found, "the Secretary made clear his intention that each portion of the Final Rule is severable." R. Doc. 36, at 60; *see* 88 Fed. Reg. at 43,828 ("[E]ach of the components of this final rule can operate in a manner that is independent and severable of each other."). The court further found that "the Final Rule can function sensibly if the Secretary is enjoined from enforcing only the offending portions of the Final Rule." R. Doc. 36, at 60. The court therefore found it appropriate to enjoin "only those provisions of the SAVE plan that permit loan forgiveness" and thus sever them from the rest of the Final Rule—which "Plaintiffs have not shown . . . harm them." *Id.* Plaintiffs do not challenge the district court's severability analysis— which they nowhere address in their motion.

As the district court recognized in denying plaintiffs' motion for a clarification, the injunction does not preclude continued implementation of the preexisting ICR plans' regulatory provisions governing loan

8

forgiveness. *Contra* Mot. 2-4. And the Department's continued implementation of the other portions of the Final Rule merely reflects that those parts are clearly lawful under the statutory authority described above—as the district court held.

Second, the requested administrative stay would be profoundly disruptive to the status quo. *Contra* Mot. 7. The Department has undertaken efforts to implement the SAVE plan for more than year, including for more than nine months before plaintiffs brought this suit. *Cf. Benisek v. Lamone*, 585 U.S. 155, 159 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence."). And plaintiffs waited well over two weeks from the district court's denial in part of their motion for a preliminary injunction to seek relief in this Court.

All portions of the Final Rule relevant to this litigation (save the one preliminarily enjoined by the district court) have already taken effect. Given their delay, plaintiffs' assertions (Mot. 5-6) of irreparable injury— particularly on an emergency basis—are difficult to credit. And that posture stands in stark contrast to *Nebraska v. Biden*, 52 F.4th 1044 (8th Cir.

2022), where this Court acted "to preserve the status quo pending the outcome of the States' appeal," *id.* at 1048 (quotation marks omitted), as the agency action challenged there had not yet taken effect. *Cf.* Mot. 4-5. The challenged action in *Nebraska*, moreover, was a one-time debt relief program that would have resulted in immediate forgiveness for millions of borrowers. Here, in contrast, the changes to the REPAYE plan that the district court declined to enjoin do not address loan forgiveness at all; instead, they simply adjust the rules for calculating the payments borrowers owe while their loans remain outstanding. Plaintiffs cannot plausibly argue that they will be irreparably harmed by the continued application of those changed calculations during appellate proceedings. Nor can plaintiffs rely on any purported injury caused by loan forgiveness under preexisting ICR plans, which have not been challenged in this case and long predate plaintiffs' suit.

Finally, the equities require denial of plaintiffs' motion. The Department and the public would suffer irreparable injury from an immediate administrative stay. As noted, the Department and its student-

10

loan servicers prepared for months to implement the SAVE plan, including by updating their computer systems and notifying borrowers of their new payment amounts. Now, those processes will be thrown into disarray— and millions of borrowers plunged into uncertainty about their payment obligations—if this Court grants the motion. Contrary to plaintiffs' suggestion (Mot. 6), the Department has not placed all borrowers in the SAVE plan into forbearance. Borrowers enrolled in SAVE are generally paying bills for July and receiving bills for August. Putting borrowers into forbearance adds to the already significant confusion caused by this last-minute litigation. Moreover, the relief plaintiffs seek—halting forgiveness for borrowers who have completed their repayment obligations under the terms of REPAYE—is completely unrelated to any forbearances in place to help transition borrowers onto the SAVE plan. That inequitable outcome should be avoided. *See Benisek*, 585 U.S. at 161 (the public interest can include avoiding the "needlessly chaotic and disruptive effect" of a requested preliminary injunction (quotation marks omitted)).

# CONCLUSION

For the foregoing reasons, the Court should deny the motion for an immediate administrative stay.

Respectfully submitted,

MICHAEL S. RAAB
THOMAS PULHAM
 /s/ *Simon C. Brewer*
SIMON C. BREWER
SARAH N. SMITH
*Attorneys*
*Civil Division, Appellate Staff*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W., Room 7529*
*Washington, D.C. 20530*
*(202) 616-5367*

JULY 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this response to a motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared with Palatino Linotype 14-point, a proportionally spaced font with serifs, and the motion complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 1919 words, according to the word count of Microsoft Word.

/s/ *Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Simon C. Brewer*
Simon C. Brewer