IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

STATE OF MISSOURI, et al.,
    *Plaintiffs-Appellees / Cross-Appellants,*

v.

JOSEPH R. BIDEN, JR., et al.,
    *Defendants-Appellants / Cross-Appellees.*

Nos. 24-2332,
24-2351

**NOTICE OF COMPLIANCE**

    Defendants-cross-appellees (collectively, the Department) respectfully submit this notice to provide the Court with information related to the Department's compliance with the injunction pending appeal issued by this Court on August 9, 2024. The attached Declaration of Denise L. Carter describes steps that the Department is taking to ensure its compliance with the injunction with respect to the interest benefit provided under the Pay As You Earn (PAYE) plan. The Department will continue to implement these steps absent indication from the Court that doing so is unnecessary to comply with the injunction pending appeal.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
 */s/ Thomas Pulham*
THOMAS PULHAM
SIMON C. BREWER
SARAH N. SMITH
*Attorneys*
*Civil Division, Appellate Staff*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W., Room 7323*
*Washington, D.C. 20530*
*(202) 514-4332*

SEPTEMBER 2024

# CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                              */s/ Thomas Pulham*
                                              Thomas Pulham

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| STATE OF MISSOURI, *et al.*,<br><br>*Plaintiffs-Appellees / Cross-Appellants*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants-Appellants / Cross-Appellees*. | Case Nos. 24-2332, 24-2351 |

## **DECLARATION OF DENISE L. CARTER**

I, Denise L. Carter, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate:

1. I am the Principal Deputy Chief Operating Officer and Acting Chief Operating Officer at Federal Student Aid ("FSA") in the United States Department of Education ("Department"). In this role, my responsibilities include the coordination of major policies, programs, and activities related to federal student aid. This includes, but is not limited to, overseeing the administration of the student loan programs, including the Pay As You Earn (PAYE) repayment plan.

2. As such, I am familiar with the policies, systems, and processes used to administer the PAYE plan and other loan repayment plans. I make this declaration based on my personal knowledge and based on information provided to me in my official capacity.

3. This declaration is to provide the Court with information related to the Department's compliance with the injunction pending appeal issued by this Court on August 9, 2024.

4. As further explained below, the Department is taking steps to change the Pay As You Earn (PAYE) plan so that unpaid interest is charged in full to the accounts of all borrowers enrolled in PAYE.

5. The PAYE plan is one of three repayment plans offered in accordance with the Higher Education Act's directive that the Secretary offer an income contingent repayment plan with payments that vary based on a borrower's income. *See* 20 U.S.C. § 1087e(d)(1)(D). The other two plans are the Income Contingent Repayment (ICR) plan and the Saving on

a Valuable Education (SAVE) plan, which was previously called the Revised Pay As You Earn (REPAYE) plan.

6. The PAYE plan was established by a final rule promulgated in 2012[1] and calculated a borrower's monthly payment based on the borrower's income. One of the PAYE plan's features addressed certain borrowers whose monthly payment did not cover the accrued interest on certain Federal loans.

7. The final rule that provided for the PAYE plan was promulgated to implement statutory improvements to the income-based repayment (IBR) plan in the Student Aid and Financial Responsibility Act, Pub. L. 111-152, and an initiative to help more borrowers reduce their monthly student loan payments. *See* 77 Fed. Reg. at 66,088-89. As a result, the PAYE interest benefit was identical to the corresponding interest benefit in the IBR statute.

8. Subject to certain limitations, the PAYE plan provided that the Department did not charge any interest that accrues on subsidized student loans that is not covered by a borrower's monthly payment during the borrower's first three years on the PAYE plan. *See* 34 C.F.R. § 685.209(a)(2)(iii) (2013).[2]

9. The PAYE interest benefit does not affect a borrower's monthly payment amount, which is determined by the PAYE plan's payment formula. Instead, the PAYE interest benefit applies if the formula-based monthly payment does not cover the full amount of monthly interest on subsidized loans. Without the PAYE interest benefit, this excess interest (that is, the amount of interest on subsidized loans in excess of the borrower's payment amount) would be added to the borrower's loan balance. The PAYE interest benefit

---

[1] *See Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 77 Fed. Reg. 66,088 (Nov. 1, 2012).

[2] In full, that provision provided:

> If the borrower's monthly payment amount is not sufficient to pay the accrued interest on the borrower's Direct Subsidized loan or the subsidized portion of a Direct Consolidation Loan, the Secretary does not charge the borrower the remaining accrued interest for a period not to exceed three consecutive years from the established repayment period start date on that loan under the Pay As You Earn repayment plan. Any period during which the Secretary has previously not charged the borrower accrued interest on an eligible loan under the income-based repayment plan or the Revised Pay As You Earn repayment plan counts toward the maximum three years of subsidy a borrower is eligible to receive under the Pay As You Earn repayment plan. On a Direct Consolidation Loan that repays loans on which the Secretary has not charged the borrower accrued interest, the three-year period includes the period for which the Secretary did not charge the borrower accrued interest on the underlying loans. This three-year period does not include any period during which the borrower receives an economic hardship deferment.

34 C.F.R. § 685.209(a)(2)(iii) (2013).

10. limited when this excess interest from subsidized loans was added to the borrower's loan balance.

11. When REPAYE was created several years later, it included a similar, but more generous, interest benefit. *See* 80 Fed. Reg. 67,204 (Oct. 30, 2015).

12. The Final Rule at issue in this case sought to simplify repayment options by updating REPAYE, which was also called SAVE, and making that updated plan the sole income contingent plan option for most new enrollments after July 1, 2024. *See* 88 Fed. Reg. 43,820, 43,827 (July 10, 2023). To that end, the Final Rule contains a provision that discontinues new enrollments in PAYE (and ICR) after July 1, 2024.[3]

13. But for borrowers already enrolled in PAYE, the Final Rule did not require those borrowers to switch plans and instead allowed them to continue repaying according to the PAYE plan's parameters. Thus, when the Final Rule took effect on July 1, 2024, borrowers already enrolled in the PAYE plan continued to receive the interest benefit provided by that plan.

14. The Final Rule also includes text that governs all pre-existing income-driven payment plans, including PAYE, even though it does not change their terms. *See* 88 Fed. Reg. at 43,902 (detailing amended regulations at 34 C.F.R. § 685.209(h)(2)(i), which carries forward the PAYE interest benefit). For example, the Final Rule updated the definition for terms like "family size" used in annual calculation of enrollees' payments. Thus, borrowers enrolled in PAYE continued repaying according to the PAYE plan's parameters when the Final Rule took effect, but when PAYE borrowers recertify their enrollment, the Rule's non-plan-specific features, such as the "family size" definition, will apply.

15. On August 9, 2024, this Court entered an injunction pending appeal providing that, "for any borrower whose loans are governed in whole or in part by the terms of" the Final Rule, the Department is "enjoined from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions." Op. 9. As noted above, every borrower on a pre-existing income-driven repayment plan has a loan that is governed in whole or in part by the Final

---

[3] On July 18, 2024, this Court entered an administrative stay "prohibiting [the Department] from implementing or acting pursuant to the Final Rule," which temporarily rendered ineffective the Final Rule's discontinuation of new enrollments in PAYE. The Court's August 9 injunction, however, does not extend to the regulatory provision discontinuing most new PAYE enrollments. As a result, the regulations in effect from July 18 to August 9 permitted new enrollments in PAYE, and the discontinuation of most new PAYE enrollments did not apply to borrowers who applied for PAYE during that period and otherwise were eligible.

3

Rule. The Court's opinion also stated that "borrowers who have remained in PAYE … are not impacted" by plaintiffs' request for injunctive relief. Op. 9.

15. On August 12, 2024, the Department filed a motion seeking clarification of the applicability of the injunction to forgiveness for borrowers on pre-existing plans like PAYE. That motion was denied.

16. To comply with the Court's injunction, the Department has halted forgiveness for borrowers enrolled in any plan promulgated under the ICR statute and has stopped implementing the payment-threshold provisions of the SAVE plan. Because the SAVE plan cannot currently be operated according to the terms dictated by the injunction[4] and new enrollment in ICR and PAYE was terminated by the Final Rule, there is currently no income-contingent plan in which a new borrower can make payments.

17. Although the Court's ruling on the injunction stated that "borrowers who have remained in PAYE … are not impacted" by plaintiffs' request for injunctive relief, and although the PAYE interest benefit was not challenged in this lawsuit, PAYE enrollees are also "borrower[s] whose loans are governed in whole or in part by the terms of" the Final Rule and for whom the Department is "enjoined from … not charging borrowers accrued interest." Op. 9. In other words, the injunction could be understood to prohibit the PAYE plan's interest benefit even though it was not a feature of the Final Rule and pre-dates the SAVE plan by more than a decade.

18. As part of its compliance efforts, the Department discovered that a subset of borrowers enrolled in the PAYE plan have continued to receive the PAYE plan's interest benefit. In accordance with the terms of these borrowers' preexisting PAYE repayment plan, they have not been charged the amount of accrued interest on their subsidized loans that is in excess of their monthly payment for the first three years. *See* 34 C.F.R. § 685.209(a)(2)(iii) (2013).

19. There are 1.35 million borrowers currently repaying under PAYE. The Department roughly estimates that the number of borrowers who might qualify for the interest benefit on PAYE is between 200,000 and 575,000. Calculation of the actual number who received the benefit after the Court issued the injunction would require knowing the amount of borrowers' payments relative to accumulating interest, consolidation status, and past repayment history, none of which is readily available. Although these borrowers' statements indicate that they have received the interest benefit since the injunction, the application of that benefit has not affected the amount billed to or paid by

---

[4] The Department is working to make REPAYE/SAVE available in a form that complies with the Court's injunction.

borrowers, nor has any forgiveness been provided. This is because the interest benefit affects a borrower's balance, but not her monthly payment amount.

20. As noted, the introduction of the interest benefit provided to these PAYE enrollees pre-dates the creation of the SAVE plan through the Final Rule, but the Department is exercising caution to avoid violating the injunction's prohibition on not charging accrued interest to borrowers whose loans are governed, in whole or in part, by the Final Rule. Therefore, the Department is taking measures to have its servicers reverse the interest benefit provided to affected PAYE enrollees dating back to the injunction's effective date of August 9, 2024, and going forward.

21. In practical terms, once the Department and its servicers have implemented the reversal of the PAYE interest benefit dating back to August 9, the affected borrowers' balances will include additional amounts corresponding to accrued interest that was not previously charged as a result of the PAYE interest benefit. That is, affected borrowers' balances will immediately increase to account for interest that was not added after August 9, 2024, and their balances will continue to increase in the future. These PAYE borrowers <u>will</u> be affected by the Court's ruling.

22. The Department sent servicers a request for a proposal on September 27, 2024, to negotiate a contract modification for these remedial measures. These measures will continue absent an indication from the Court that applying the PAYE plan's interest benefit for the subset of eligible PAYE borrowers does not violate the injunction pending appeal, or until further order by this Court or the Supreme Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of September 2024.

*Denise L. Carter*

**Denise L. Carter**